■ LUBECK REALTY, INC., Respondent, v FLINTKOTE COMPANY et al., Appellants.—Mikoll, J. Appeal (transferred to this court by order of the Appellate Division, Second Department) from a judgment of the Supreme Court (Weiner, J.), entered August 25, 1989 in Rockland County, upon a verdict rendered in favor of plaintiff.

This matter involves two discrete issues: (1) did the trial evidence support a finding that defendants employed plaintiff's president, Chester Lubeck, as a broker and agreed to pay him a 10% commission, and (2) did Lubeck bring to defendants a party ready, willing and able to purchase a certain six-acre parcel in the Town of Orangetown, Rockland County, on the terms specified by defendants.

The pertinent facts are as follows. Plaintiff sued defendants for a brokerage commission allegedly owed Lubeck, a licensed real estate broker, pursuant to an implied, oral brokerage contract after Lubeck's alleged procurement of parties purportedly ready, willing and able to purchase the property for sale under terms set by defendants. After the denial of cross

motions for summary judgment, the action was tried before a jury which rendered a verdict in favor of plaintiff. Defendants then moved pursuant to CPLR 4404 (a) to set aside the verdict and either to have judgment directed in their favor as a matter of law or a new trial ordered on the ground that the verdict was contrary to the weight of evidence. The motion was denied and defendants now appeal.

Giving plaintiff, the prevailing party, the benefit of every favorable inference, as we must *(see, Rowe v Board of Educ., 120 AD2d 850, 851, lv denied 68 NY2d 609)*, we hold that Supreme Court erred in denying defendants' motion to set aside the verdict and that it should have directed judgment in their favor dismissing the complaint.

In the instant case, plaintiff failed to prove the elements of its cause of action. The record discloses that Lubeck learned that defendant Flintkote Company (hereinafter Flintkote) would soon reacquire title to two parcels of property in Orangetown after the completion of certain foreclosure proceedings. Lubeck had followed the history of the foreclosure for a long time and had spoken to numerous prospective purchasers and submitted several offers for the property over the years, the last of which is implicated in the instant case. In 1986 he approached three prospective purchasers, Carl Landgren, George E. Bouton and Anthony Richards, and asked them of their potential interest in purchasing the property. This inquiry preceded any contact with defendants' agent, Dexter Lindberg,* who was charged with selling the two parcels for defendants. Flintkote, which was the title owner of the land, and defendant Genstar Development, Inc., which dealt with property acquisitions and sales, were wholly owned subsidiaries of defendant Genstar Corporation. On May 16, 1986, Lubeck spoke to Lindberg and inquired if the property would soon be offered for sale and what the asking price would be. Lindberg informed Lubeck that he was assembling a sales package describing the parcels and the terms upon which Flintkote would offer them for sale. He also informed him that defendants would be asking $400,000 for the six-acre parcel at issue in the instant case and $1,000,000 for an adjacent larger parcel.

On May 20, 1986, Lubeck, Landgren and Bouton called Lindberg to discuss an offer for the six-acre parcel. Landgren and Bouton, for themselves and for Richards, offered to buy

---

* Although Lindberg was initially named as a defendant in this case, the action was dismissed against him.

the parcel for $380,000 in cash. Lubeck contends that Lindberg agreed to the proposal. According to Lindberg, however, he advised Lubeck to submit a written proposal which would then be referred to Flintkote's senior management. It is on the conversation of May 20, 1986 that Lubeck bases his entitlement to a broker's commission. However, a letter from Lubeck to Lindberg on the following day set forth the proposal from Landgren, Bouton and Richards to buy the property for $380,000 and requested that Flintkote "advise as soon as possible" whether the proposal was acceptable. A $19,000 check from Bouton accompanied the letter. The letter also detailed the prospective purchasers' requirement that Flintkote provide "assurances that the subject property [wa]s not adversely affected by 'dumped waste' " in order for the transaction to go forward.

On May 28, 1986, Lindberg wrote to Lubeck rejecting the conditions listed in the May 21, 1986 proposal and stated that Flintkote would not make any warranties with regard to possible land contamination. The letter closed by stating that Lindberg looked forward to receiving a formal offer to be presented to Flintkote's senior management.

On June 2, 1986, the sales package for the two parcels was circulated to interested parties, including Lubeck. The sales price was set at $400,000, net of realtor commission. On June 10, 1986, Lubeck sent another offer to purchase the parcel for $380,000, which was accompanied by a certified check for $19,000. No conditions were mentioned in this communication. Lindberg, meanwhile, had negotiated an option to sell both parcels to a single party for the full price. Lindberg thus rejected the June 10, 1986 proposal and returned the $19,000 check.

Plaintiff's contention that an express or implied real property listing agreement existed is unsupported by the evidence. A contract cannot be implied in fact where the facts are inconsistent with its existence (see, La Vine v La Vine, 148 AD2d 926, lv granted 74 NY2d 612). Of special significance herein is Lubeck's May 21, 1986 letter which entirely rebuts his contention that he had struck a deal with defendants on May 20, 1986 and was therefore entitled to a real estate commission for bringing the parties together. The evidence here, rather than indicating that Lubeck had proven entitlement to an implied broker's commission, indicates that Lubeck was not acting as a broker for defendants but was representing the three buyers. Lindberg early on refused to give Lubeck a broker's listing, whereupon he attempted to

negotiate with defendants for more favorable terms for the prospective purchasers than that specified by defendants. The record indicates that Lubeck was a volunteer without authority who attempted to entice defendants into liability for commissions *(see, Provost v St. Francis Commandery Hall Assn.,* 118 AD2d 922, 923).

Lubeck has failed to prove that defendants employed him as broker and that he brought forward a purchaser ready, willing and able to buy the six-acre parcel on the terms specified by Flintkote. The offer made by Lubeck was below defendants' asking price. More significantly, the full terms of a real estate sale were not fleshed out in the May 20, 1986 conversation between Lubeck and Lindberg. The meeting of the minds of parties to a real estate contract must relate to all essentials customarily encountered in such a transaction *(Kaelin v Warner,* 27 NY2d 352). Mere agreement as to price is insufficient to entitle a party to a broker's commission *(Taibi v American Banknote Co.,* 135 AD2d 810, *lv denied* 72 NY2d 803). Here, there was no valid line of reasoning or permissible inferences which could have led a rational person to the conclusion reached by the jury *(see, Cohen v Hallmark Cards,* 45 NY2d 493, 499; *Nicastro v Park,* 113 AD2d 129, 132). Therefore, the complaint should be dismissed in this case.

Judgment reversed, on the law, without costs, and complaint dismissed. Mahoney, P. J., Weiss, Mikoll, Yesawich, Jr., and Harvey, JJ., concur.